MILLIARD "BUDDY" REEVES V. THE STATE.

No. 18710.   Delivered January 20, 1937.

The opinion states the case.

*Percy Woodard* and *Paul W. Warren,* both of Marshall, for apellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for thirty years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Emery Lee Cox by cutting him with a knife.

The testimony of the State was to the effect that appellant and deceased had had a quarrel a few minutes before appellant assaulted deceased. Again, it was the version of the State that appellant attacked deceased with a knife having a blade about two and one-half inches long, and cut him twice. Deceased was immediately carried to a hospital where he died in about five days.

The attending physician testified that there was a wound on the left side of the head of deceased above the ear, and one on the left forearm. The wound on the forearm was superficial. The physician described the wound on the head as follows: "That wound was a lacerated wound, perhaps an inch long or maybe a little longer, with a depth the best I could ascertain to the skull." He testified further that in his opinion the wound above the ear was the cause of the death of deceased. On cross-examination he testified, as follows: "When I first saw him all I saw was a laceration on the side of his head above his ear and on his arm. Yes, sir, when I started treating him I started treating him for lacerations. My purpose in probing the wound was to find out the depth of the wound and ascertain whether there was a fracture of the skull. To my knowledge I did not find any injury to the skull. From my experience, had there been an injury to the skull I probed I would have very likely located it with my hand. I did not detect any roughness on the skull. * * * I was not unduly alarmed the first time I saw this boy about his condition. I considered it as a wound on the head and at that time it did not seem serious. I probed for an injury to the skull and failed to find any. During the progress of my treatment this wound on the head tended to heal and get better. * * * When I first saw him he was bleeding. He was not bleed-

ing profusely when I first saw him; at that time there was a partial clot formed." The witness testified further that there was an injury to an artery in the region of the wound. However, his testimony, in its entirety, negatived the fact that deceased had died from the loss of blood. Again, he gave no testimony showing that the wound had become infected. His version was that said wound received proper treatment and tended to heal and get better. Again, he testified that he was surprised when deceased died.

It appears that several days prior to the difficulty deceased had had a splinter removed from one of his fingers. According to the testimony of deceased's brother, the physician had stated to deceased that the wound in the finger "had cold." It appears that this finger had become badly swollen as a result of infection. During the time deceased was in the hospital the finger was not treated. The attending physician, from whose testimony we have hereinabove quoted, testified on cross-examination that it was possible that pus might have been taken into the "blood system" of deceased from the infected finger. He said: "It is my opinion that the head injury killed him. It is possible that the cause of death could just have easily come from the source of infection." He testified further: "If I recall I told you yesterday that it was possible it could have come from down there. That old injury possibly could have caused death. Yes, to put it in plain language, a part of that finger could have sluffed off. Yes, infection could have eaten through the walls of the blood vessels and pus come in there and been carried away in the blood stream. There are many places where it could lodge. It is possible it could have lodged in a vein. As to what would be the effect if a foreign body had come in the blood stream if it had been large enough and not absorbed it would have easily caused death. That would take from a few days to several."

In answer to hypothetical questions, Dr. H. H. Key, a witness for appellant, testified that, from his experience, he was of opinion the wound above the ear of deceased was not sufficient to cause death.

It appears further from the testimony that the attending physician had directed that deceased be given only a liquid diet and kept quiet. The brother of deceased testified that he visited deceased in the hospital and deceased sat up while he was there. He testified further that he bought deceased three apples and that he saw him eat one of them.

Appellant did not testify.

It is appellant's contention that the evidence fails to show beyond a reasonable doubt that the wound he inflicted on deceased caused his death. In view of the fact that the attending physician failed to state any facts upon which he based the opinion that said wound was the cause of death, and of the further fact that he was of the opinion during the time he was treating deceased that the wound was not of a nature that would likely cause death when properly treated, and also in view of the fact that deceased was suffering from an infected finger, which, according to the testimony, not only of the attending physician but of another physician, might have caused his death, we are of opinion that appellant's contention should be sustained. It was incumbent upon the State to prove beyond a reasonable doubt that the wound inflicted by appellant upon the deceased caused his death. Buford v. State, 17 S. W. (2d) 1072. If said wound had become infected it would seem that such fact should have been shown by the testimony of the physician. If death resulted from the loss of blood, certainly such fact should have been proven. As the record stands, the physician merely expressed the opinion that the wound caused the death of deceased. He stated no fact upon which he based his opinion. This being true, and the testimony in its entirety showing that death might have resulted from the infected finger, we are unwilling to let the verdict stand.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.