EDDIE JONES v. THE STATE.

No. 19061. Delivered June 9, 1937.
Rehearing Denied December 8, 1937.

The opinion states the case.

*C. E. Florence,* of Gilmer, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of murder without malice, and his punishment was assessed at confinement in the state penitentiary for a term of five years.

Appellant's main contention is that the testimony of the accomplice is not sufficiently corroborated to sustain his conviction. In order that the conclusion which we have reached may be readily understood we deem it proper to briefly state

the salient facts proven upon the trial as reflected by the record.

Adell Bright, a co-defendant, testified for the State that he, Walter Davis, George Jones, and the appellant on the 4th day of June, 1935, went from Longview to Cypress Creek bottom in a coupe with a rumble seat; that they parked the car in the bottom and appellant and the witness armed with a shotgun went to the field where three negroes were at work; that they engaged the deceased, Will Peoples, in a conversation about squirrels and Pentecost preachers; that Walter Davis and Jones remained in the woods near the car; that they, appellant and witness, took the negro down to the bottom to where Davis and Jones were; that they had a wet rope and began to whip the deceased; that witness stood watch on top of the hill; that the reason they whipped this negro, as he understood it, was that they suspicioned that he informed others that Davis and appellant had been engaged in the illicit manufacture of whisky. The witness further testified that they whipped this negro with the rope off and on for one hour and a half; that they had his clothes stripped off; that during the course of the whipping the negro was calling on the Lord; that he would say, "Oh Lord," "Oh Master"; that the witness finally told them he was through with it and was not going to have another thing to do with it; that this whipping took place in Upshur County, Texas; that when they quit whipping the negro he went to the creek, swam across and went to the other side in some brush. He further testified that Walter Davis, Ed Jones, the appellant, and he, the witness, left Longview about 7:30 or 8 o'clock and that the negro George Jones had part of his hand amputated.

Mr. and Mrs. Lindsey testified that they lived at Longview; that on the 4th day of June Adell Bright, Walter Davis, the appellant, and a negro with part of his hand cut off were at the Lindsey Garage; that they left there together in a Chevrolet coupe with some kind of a seat in the rear which appeared to be a rumble seat.

Ethel Aaron testified that she lived in Dixie City, ten miles north of Longview in Gregg County; that during the month of June, 1935, a negro with all of his fingers and thumb cut off came into the restaurant and ordered four sandwiches; that while she was preparing the sandwiches she noticed a car parked across the street; that there were three white men in the car, and when the negro received the sandwiches he went to the car, got into the rumble seat, and the four drove off towards Longview.

The wife of the deceased reported to the deceased's father that two white men had come to the field armed with a shotgun and taken her husband into the woods; that she and her father-in-law then went in the direction of which he was taken and near the creek they found a wet rope. They found his tracks leading into the water; they followed his tracks and found him lying in the brush with nothing on his body but a piece of his shirt and a horde of mosquitoes. The father tried to carry his son on his back but the boy could not stand to be carried that way. They went after a conveyance and took him home where he died within a few hours. She identified the appellant as one of the men who came to the field and marched her husband down into the woods.

The sheriff of Upshur County testified that he went to the place pointed out by Cornelius Peoples, the father of the deceased, where he had found the wet rope. There he saw signs of wallowing and scuffling. He also found clubs cut and four tracks of different sizes leading from that place to where a car had been parked on the other side of the creek. One of the tracks corresponded with the tracks of George Jones. He, the sheriff, compared them and stated that they fitted the foot of George Jones. George Jones wore broad work shoes with a great many tacks and in the imprint of the tracks he, the shiriff, noticed the imprint of the tacks. There were three tracks which led from the cotton field to where the whipping took place. The sheriff also found a set of tracks that fitted the foot of Adell Bright.

The justice of peace who examined the deceased testified that the body of the deceased from the middle of his back to the middle of his knees was beaten into a jelly; that two ribs on the right-hand side appeared to be loose, and three on the left-hand side; neither connected to the back bone. The doctor testified that the death was caused by the whipping.

Appellant did not testify. His defense was that of an alibi which he established by a number of witnesses. This became a controverted issue as will appear from the testimony. The jury settled this issue adversely to appellant.

The testimony in this record shows a most atrocious crime, one that has but few parallels in Texas. By the testimony of Bright the State made a complete case which, however, standing alone would not be sufficient to justify and sustain appellant's conviction because he, the witness, was an accomplice. But the record discloses many facts and circumstances which fully corroborate the witness on pertinent and material facts testi-

fied to by him. The appellant in company with Bright and Davis and George Jones were seen by Mr. and Mrs. Lindsey leaving Longview in a coupe at seven or eight o'clock A. M. Ethel Aaron saw them together later in the day in a coupe going in the direction of Longview. The wife of the deceased testified that in her best judgment the appellant was one of the men who came to the field accompanied by another armed with a shotgun; that they took her husband into the woods. The rope with which deceased was whipped was found at the place where the witness Bright testified the whipping occurred. Four tracks were found, each of a different size, leading from the point where the parties had crossed the creek on a foot log to where their car was parked. These facts corroborate the accomplice testimony that four persons participated in the brutal whipping. The record further shows that after appellant had been released from jail on bond Myrtle Turner met him in a restaurant and told him that he ought to be ashamed of himself about whipping the negro as he did—to which he replied, "If you had done what that negro did, you would have got whipped too." This is rather a significant statement on the part of appellant when considered in connection with the accusation brought against him by the witness. Instead of denying it, he tried to justify his act on the ground that the negro had done something which merited the whipping. Having stated the facts, are they sufficient to corroborate the accomplice? We think so.

Appellant has a great number of bills of exception to the introduction of testimony as well as a great number of objections to the court's charge in the record. To discuss them will serve no useful purpose and unnecessarily extend this opinion. All of the bills of exception relating to the admission of evidence are qualified at length by the court and as thus qualified, none reflect reversible error.

Appellant vigorously argues that there was no intent to kill because they had a gun and could have shot deceased or cut his throat with a knife. That might be true if they had resorted to those means as the messenger of death. In that event death might have been instantaneous and at least less painful, but they, in their mind, might have decided to use a more painful method so as to kill him by degrees. The presumption of law is that a person intends that which is the natural and probable consequences of his voluntary acts. No person could whip another with a wet rope and beat his flesh into a pulp without destroying the skin and thereby interfering with its proper

function and such would produce the same result as if that part of his body had been burned.

Appellant objected to the following instruction:

"You are further instructed, that the witnesses, Adell Bright and George Jones, are accomplices, as that term is applied to them as witnesses, and I instruct you that you cannot convict the defendant upon the testimony of said witnesses, or either of said witnesses, unless you first believe their testimony to be true, and then you cannot convict the defendant upon their testimony, or either of said witnesses' testimony, unless you believe there is other evidence in the case than that of said witnesses, or either of said witnesses, tending to connect the defendant with the commission of the offense charged; and you are instructed that the corroboration is not sufficient if it merely shows the commission of the offense charged, to-wit, the murder of William Peoples, but it must tend to connect the defendant with the commission of said offense."

This charge is an approved form. The defendant objected to fact that the court did not instruct the jury that unless they first believed beyond a reasonable doubt that the testimony of the accomplices was true and they further believed that there was other evidence in the case other than that of said accomplices or either of them tending to connect the defendant with the commission of the offense charged, they could not convict, etc. Appellant's main objection to said charge seems to be that the court omitted the words "beyond a reasonable doubt." The court in his instruction on murder with malice, murder without malice, and aggravated assault charged the jury in each instance that unless they believed from the evidence beyond a reasonable doubt that defendant acting either alone or with others as a principal committed the offense, etc., they should acquit him. In other words the court in each instance instructed the jury that unless they believed from the evidence beyond a reasonable doubt that defendant was guilty of either murder with malice, murder without malice, or aggravated assault, they should acquit him. This we think was a sufficient instruction because in construing the charge it must be considered as a whole.

Appellant also objected to the court's charge because the court did not submit to the jury the law with reference to an assault to murder and assault with intent to murder, both with and without malice aforethought. We do not think that the testimony raised the issue. If appellant assaulted the deceased with intent to murder and accomplished that result, he would

be guilty of murder and not of an assault with intent to murder. The court also instructed the jury that before they could find the defendant guilty of murder, they would have to find that he entertained the specific intent to kill. See Farris v. State, 55 Texas Crim. Rep., 481; McCall v. State, 14 Texas Crim. Rep., 355 (363).

Appellant also complains of the action of the trial court in overruling his motion for a new trial based upon newly discovered evidence. The alleged newly discovered evidence was not and would not have been admissible as original testimony because it only tended to impeach the witness Myrtle Turner. This court has many times held that a new trial would not be granted on newly discovered evidence which was merely impeaching in its nature. See Thomas v. State, 63 S. W. (2d) 705; Nelson v. State, 66 S. W. (2d) 312; Allen v. State, 75 S. W. (2d) 101; Cooper v. State, 280 S. W., 597; Bracken v. State, 9 S. W. (2d) 356.

We have carefully considered and examined each and every complaint but find nothing therein which would authorize a reversal of the case.

It is therefore ordered that the judgment of the trial court be and the same is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant's attorneys have filed a rather vigorous motion for a rehearing herein, the original motion containing some strictures and comments upon this court which we think in very bad taste and not justified by the facts and the record; they have been withdrawn by a supplemental motion, and which, as thus amended, we proceed to consider.

In the motion for rehearing there is vigorous complaint made relative to some inadvertent statements in the original opinion as to the reason why the deceased was being whipped, and the statement therein that the reason he was being so whipped, "was that they suspicioned that he informed others that Davis and appellant had been engaged in the illicit manufacture of whisky," is hereby withdrawn, and there is substituted therefor the following from the testimony of Adell Bright: "Q. Why did they whip him? A. Best of my knowledge over

some whisky; what I learned about it; that is what it was. Somebody had been turned in about some whisky. That is what they told me."

That portion of the opinion that states that the witness Ethel Aaron testified that the three white men and the negro, George Jones,—after the negro had purchased and received four sandwiches,—got into the rumble seat, and the four drove off towards Longview, is withdrawn, and should be made to read "and they left going towards James,—north." Also that portion of the opinion which states that "Ethel Aaron saw them (the three white men and the negro George Jones) together later in the day in a coupe going in the direction of Longview," should be corrected to read "in the direction of James."

Objection is also made relative to the fact that such opinion continuously refers to the instrument used in the whipping as a "wet" rope. We think the fact that the rope is referred to as "wet" is fully justified by the facts proven, and fair inferences drawn therefrom. That the deceased was whipped with a rope is shown by the testimony of Bright: "On the way down that morning we * * * bought a rope, grass rope. With reference to size, it was about a quarter of an inch. It was not as large as a well rope should be. That was the rope they used in whipping the negro." As to its being wet, the deceased's father testified that on the same afternoon his son was taken away from the field and whipped, that he went down into the bottom and "I found a rope where he had been whipped, something like a half inch plow line. I picked up that rope and turned it over to the sheriff. The rope was wet when I found it, wet and stiff. It had not rained that day." Testimony of Sheriff J. W. Bryce: "I went to the home of Cornelius Peoples and Cornelius Peoples turned over to me on that occasion a rope. * * * At the time I obtained possession of this rope, it was soaked in water." It occurs to us that in the original opinion we were justified in saying that the deceased was whipped with a rope, and that such rope was wet.

It would do no special good to go over in detail the corroborating circumstances in the record relied upon that would tend to show the appellant's participation in the offense charged. Suffice it to say that we find him in the company of three other persons, one a negro named George Jones, going towards where the offense was committed. We find him actually present in the field just before the fatal whipping, and in charge of the negro who later died from wounds inflicted upon his body. We

find him taking this negro off into the bottom; later we find the deceased telling his father that George Jones was one of the ring-leaders in this matter; we find appellant's statement to the witness Myrtle Turner, which statement might be termed an admission of guilt, and to which the jury evidently attached some weight; and these facts taken together, with other matters set forth in the original opinion, evidently convinced the jury, and confessedly also have great weight with us, as going far to convince us that such testimony tends strongly towards the conclusion that appellant had something to do with this most unusual crime. We can see no reason to recede from the original opinion herein on this matter of corroboration of the accomplices' testimony. Such corroboration may be a succession of circumstances, and should not of a necessity come from any one certain witness, and we hold that all the circumstances taken as a whole were adequate to operate as sufficient corroboration of the confessed accomplices' testimony.

The motion for a rehearing is overruled.

*Overruled.*