# HUBERT PHILLIPS V. STATE.

No. 24168. November 24, 1948.
Rehearing Denied January 12, 1949.

Hon. Temple Shell, Judge Presiding.

*Allen, Locke & Kouri,* of Wichita Falls, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 5 years.

Appellant challenges the sufficiency of the evidence to sustain his conviction for murder.

The record reflects that on the night of September 23, 1947, S. T. Sanders, Hubert Phillips, and the deceased, Leroy Farrabee, were together and had been drinking beer and whiskey. Late that night they purchased some more beer and drove out several miles East of Wichita Falls. After they had driven several miles they stopped, drank some more beer, and while thus engaged, appellant and the deceased became involved in a difficulty, which resulted in Farrabee being knocked to the ground. Sanders and Phillips then returned to Wichita Falls leaving the deceased lying helpless and unconscious or semiconscious on the side of the highway. The next morning the lifeless body of Leroy Farrabee was discovered in the barrow ditch. About 11 A. M. on said day appellant and Sanders had one C. W. Hammock drive them out to the scene of the difficulty and found that Farrabee was gone. They concluded that he had sobered up and had returned to town. About 4 P. M. that afternoon, after seeing a report in the newspaper that Leroy Farrabee had been found dead by the side of the highway, appellant immediately left Wichita Falls, went to Levelland, and from there to Oakland, California, where he was subsequently apprehended.

Dr. Joseph G. Pasternack performed an autopsy on the body of the deceased. He described the wounds and bruises on the head of the deceased and the condition of the brain after removing the top part of the skull. He found much coagulated blood in all parts of the brain indicating hemorrhages due to severe blows on different parts of the head, but he found no trace of alcohol in the contents of the stomach or urine. Appellant admitted striking the deceased at the time and place in question, knocking him down, rolling him to the edge of the

highway, and left him lying there. He contended that he struck the deceased with his fist only one time and that he did not strike him with a beer bottle, however, the sheriff found two beer bottles at the scene of the difficulty.

Sanders, who was present at the time and place of the commission of the offense, testified that appellant struck the deceased three or four licks, then rolled him over to the edge of the highway, and left him lying there in a helpless and apparently unconscious condition because he did not want any more trouble with him.

Art. 1256, P. C., defines murder as follows: "Whoever shall voluntarily kill any person within this state shall be guilty of murder." Voluntarily means intentionally and with design. Therefore the question here presented rests upon the intent of appellant in inflicting the injuries which resulted in death. When a deadly weapon is used in a deadly manner the presumption of intent to kill is practically conclusive, but, if the instrument or means used be not dangerous or be not used in a deadly manner, then the intent to kill will not be presumed but must be established by facts. The facts in this case show that appellant struck the deceased three or four blows with great force, by which he ruptured almost all the arteries in the brain; that after knocking him down rendering him helpless and in an unconscious, or semi-conscious, condition, he dragged him to the edge of the road, and left him lying there. The facts, in our opinion, show such a disregard for human life as would justify the jury's conclusion that he intended to kill the deceased. See Lee v. State, 44 Tex. Cr. R. 460 (72 S. W. 195); Jones v. State, 133 Tex. Cr. R. 322 (110 S. W. (2d) 571; and Crenshaw v. State, 29 S. W. 787.

In the instant case, the court instructed the jury on the law of murder with and without malice, and on aggravated assault. In his charge relating to murder, he instructed the jury relative to an intent to kill. He, also, in separate paragraph, instructed the jury that unless they found and believed from the evidence beyond a reasonable doubt that the defendant at the time he struck the deceased, if he did strike him, had the specific intent to kill the said Leroy Farrabee, and unless they so found, to find him not guilty of murder with or without malice. It will be noted that the court in his charge required the jury to believe from the evidence beyond a reasonable doubt that appellant entertained the specific intent to kill before they would be authorized to convict him of murder.

Appellant next complains of the introduction in evidence of three photographs showing the deceased lying in the ditch on the side of the highway. Appellant objected to the introduction in evidence of said photographs on the ground that they did not tend to solve any issue since appellant admitted that the dead man found in the ditch was Leroy Farrabee and was in the condition when found as that testified to by Mr. Vance; that the photographs served no purpose other than to inflame the minds of the jury and were prejudicial. We see nothing reflected by the photographs which may tend to inflame the minds of the jury to the prejudice of appellant. They merely show a dead body, no blood or anything else which may inflame the minds of the jury to the prejudice of appellant. While there was no necessity for the introduction in evidence of the photographs, their mere introduction in evidence, without the exhibition of any revolting or gruesome fact or facts would not require a reversal of this case. If error at all, it is harmless error.

Bill of Exception No. 2 shows the following occurrence: While appellant was being cross-examined by the district attorney he was asked if Inspectors Evans and Longnecker came to see him while he was in a hospital at Oakland, California, to which he replied in the affirmative. He was then asked if they did not ask him what happened in Texas. Appellant, through his counsel, objected to the evidence sought to be elicited on the ground that he was incarcerated at the time. Thereupon the court retired the jury and heard the evidence relative thereto with the purpose of determining whether or not appellant was under arrest at the time. The evidence disclosed that the inspectors did not arrest him at the time and did not place a guard over him until later that afternoon, and appellant did not think that he was under arrest until he was under a guard. Thereupon the court permitted the state to elicit from him the fact that he told the inspectors that he was drunk the day before he left Wichita Falls and didn't know anything about it. We see no error reflected by the bill. See Burkhalter v. State, 79 Tex. Cr. R. 336 (184 S. W. 221) (Syl. No. 5).

Bill of Exception No. 3 shows the following occurrence: Appellant testified in chief that on the night in question the deceased bragged on his ability to fight. Thereafter, the district attorney, on cross-examination, asked him if, in fact, he did not brag on his prowess as a fighter, to which appellant replied in the negative. The district attorney then asked him if he did not tell the deceased about having a fight at the White Rose in

Electra? He replied to this in the negative but further said that it was at a little place near the "Red Roof." That is the place where the fight occurred, but he did not tell Leroy (meaning the deceased) about it. Then the district attorney inquired of him if he had told the deceased about the trouble he, appellant, had with Joe Wilson and how he took care of Wilson. He replied that he did not. Appellant, by and through his attorneys, objected to the questions and answers required to be given on the ground that it was an attempt on the part of the state to prove an extraneous offense, not involving moral turpitude or felony; that it is prejudicial and inflammatory.

We think the inquiry related to what transpired between appellant and the deceased at the time and place of the commission of the alleged offense and was permissible. The first question was clearly proper since it was a cross-examination relative to the testimony given by him in chief, and if there was any part of it improper or inadmissible, he should have separated the same from the admissible part and directed a specific objection thereto instead of a blanket objection to the whole. This is the rule in this state. See Aven v. State, 77 Tex. Cr. R. 37 (177 S. W. 82).; Autry v. State, 143 Tex. Cr. R. 252 (157 S. W. (2d) 924); McKinney v. State, 80 Tex. Cr. R. 31 (187 S. W. 960); and Branch's Ann. P. C., page 135, Sec. 211, where many cases on the subject are cited.

By Bill of Exception No. 4 he complains because the court declined to submit his special requested instruction on the law of circumstantial evidence or incorporate one of like import in his main charge. We see no error reflected by the bill. The facts clearly show that appellant killed the deceased although the intent with which the offense was committed may depend on circumstantial evidence, yet this would not require an instruction thereon unless the entire case rested on circumstantial evidence. See Branch's Ann. P. C., page 1039, Sec. 1874, where many cases are cited. See also Flagg, alias Rainey v. State, 51 Tex. Cr. R. 602 (103 S. W. 855); Williams v. State, 58 Tex. Cr. R. 82 (124 S. W. 954); and Egbert v. State, 176 S. W. 560.

His special requested charge No. 2 as incorporated in Bill of Exception No. 5 is on the weight of the evidence and therefore the trial court was justified in declining to submit the same.

Appellant, in addition to the specially requested charges No. 4 and 5, requested four others, three of which the court de-

clined to submit to the jury. The last one was definitely incorporated in the court's main charge. The special requested charges Nos. 6, 7, and 8 which the court declined to submit have been examined by us and we think the court was correct in declining to submit the same.

All other matters complained of have been carefully examined by us and are overruled.

From what we have said it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Opinion approved by the Court.

BEAUCHAMP, Judge.

After a careful review of the record in this case, we feel that the original opinion sufficiently discussed the pertinent questions and reached the proper conclusion relative to them.

We note in the motion for rehearing that considerable attention is given to the questions of fact. Some statements made in the opinion are criticized because the exact wording was not found in the evidence. We think that the opinion is justified in such statements as the only result to be concluded from the facts in the case. For instance, when the opinion says that deceased was struck three or four blows with great force, we are justified in saying so because there were three or four serious wounds which could only have been inflicted by the application of great force.

From the motion we quote: "We recognize the fact that the court instructed the jury that they must find that the Appellant had the specific intent to kill but we do not feel that the time has arrived when this Honorable Court is going to say that just because a jury found something that settles the question conclusively." This view of the law is incorrect. If the jury finds a fact based on evidence it is conclusive on this Court. It always has been and must, of necessity, continue to be.

All other questions raised on the motion have been considered and the proper conclusion reached. It is not required that the language of the opinion be acceptable to everyone. No two judges would say exactly the same thing. If the proper con-

clusion is reached on the question involved, the case has been properly decided. We think it has been done in the instant case and the motion for rehearing is accordingly overruled.