## GABINO AGUILLAR V. STATE.

No. 24298. March 9, 1949.
Appellant's Motion to Reinstate Appeal Granted May 18, 1949.
Rehearing Denied June 24, 1949.

510

[redacted]

*R. E. Lee,* Mason, and *Petsch & Petsch,* Fredericksburg, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the state.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of four years.

The transcript before us in this case contains neither a judgment nor a sentence, both of which must appear in the transcript to confer jurisdiction on this court. See Rains v. State, 137 Tex. Cr. R. 315 (129 S. W. 2d 669) ; Miller v. State, 129 Tex. Cr. R. 217 (86 S. W. 2d 251) ; Wheeless v. State, 142 Tex. Cr. R. 68 (150 S. W. 2d 806) ; Ellis v. State, 140 Tex. Cr. R. 339 (145 S. W. 2d 176) ; and Art. 766, C. C. P., and cases thereunder cited.

For the reason stated, the appeal is dismissed.

Opinion approved by the court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The appeal is from a conviction for murder without malice and a sentence of four years in the penitentiary.

On original submission the appeal in this case was dismissed. The record calling for such order has been corrected by supplemental transcript and the case is now placed on the docket for consideration on its merits.

The appeal is based upon four contentions: That the evidence is insufficient to establish beyond a reasonable doubt that the deceased died as a result of a blow inflicted by appellant; that it is insufficient to show intent; and that the court erred in refusing to give defendant's special requested charges Numbers 2 and 3. If the evidence is insufficient then the charge would become immaterial. Consequently, we first discuss the sufficiency of the evidence.

The very unusual fact situation is that we find no particular conflict in the evidence, except the opinion testimony of several physicians, though a large number of witnesses were called by the state and by the defendant. The deceased was the owner of the dance hall and beer joint, of which he and his wife were in charge at the time. It seems that the parties had gathered to attend a dance which was scheduled for the evening of May 29th, 1948. Among the guests were appellant and his two brothers. They were Mexicans and the crowd was mixed. Two couples who came together were being served at a table while the Mexicans were at the counter drinking beer. The two groups were communicating with each other in a friendly way when Mrs. Ford, the wife of the deceased, approached the couples and asked if the Mexicans were bothering them. To this they gave a negative answer and the friendly relationship continued. Mrs. Ford later approached the Mexicans and told them they would have to take their seats or leave the room. Appellant testified that he was preparing to leave, while it was the view of others that the Mexicans were declining to do either. Mr. Ford then aproached them, reminded them what his wife had told them to do, and ordered them to either take a seat or get out. The Mexicans protested that they were not disturbing anyone, that the two couples were their friends and they did not want to break off their friendly relationship. Ford took hold of one of the Mexicans, apparently for the purpose of putting them out of the room. Appellant testified that he was the one. No one seemed to have a clear direct view of all the things that took place except that appellant struck Ford with a beer bottle which had some beer in it. The bottle was broken and the result was

a wound over Ford's left ear. He sank to the floor and was given attention by some of the parties until a local physician arrived, which was within a very few minutes. The patient died within five to fifteen minutes, without regaining consciousness and without uttering a word.

Following the state's testimony, the defendant called several physicians, among them a well known heart specialist from San Antonio who testified that he had treated the deceased for a heart trouble and he further concluded that Mr. Ford could have died from the heart trouble as a result of the shock and struggle in which he was engaged, and expressed doubt that he died as a result of the blow. Other physicians were called and their testimony was along the line of that given by the heart specialist, so far as the question of the cause of the death was concerned. The result was that the jury was supplied with sufficient information to justify them in finding that the death was a result of heart trouble and not a direct result of the lick on the head with a beer bottle. It will be noted, however, that Dr. James Gordon Bodenheimer, a witness called by the defendant, said: "I admit that the blow itself could have caused the man's death, and a coronary occlusion might not have had anything to do with it. I do not say that a man could not be killed by being hit over the head with a beer bottle; I would not say that now."

Dr. J. E. Wiedeman, recalled as a witness for the defendant, said: "I did not find any depression in the skull." He arrived to attend Mr. Ford some thirty minutes after he had died. He further testified, on cross-examination, "It would be possible for a man to have been struck on the head with a beer bottle to suffer the bursting of a blood vessel in the brain without there being a fracture of the skull. That could cause his death."

Mrs. Ford, the wife of deceased, gave evidence contradicting the testimony of the heart specialist that her husband had heart trouble.

The state called Dr. J. W. Fussell in rebuttal. He had practiced medicine since 1892 and was located in London, the little town which was the scene of the homicide, and was the physician who was present when Mr. Ford died. He gave his reason for his conclusion that the death was caused by the lick on the head. Other doctors called in behalf of the defendant did not seem to agree with this as a sound medical reason. No doubt that question was presented to the jury whose province it was to determine the question involved. This doctor further testified: "As to whether I ever knew of any history of heart trouble he

had, I will state that he was treated in San Antonio principally for heart trouble; I never could find heart trouble. I examined Mr. Ford about three months before his death, for the purpose of insurance for the Woodmen. I checked his heart condition, checked his blood pressure and listened to his heart beat. I found his heart and blood pressure perfectly normal; he had as good a heart as I ever listened to. I reported that he was a safe insurance risk." Again, on cross-examination, "As to whether ordinarily that does not produce death, I will say this did; a severe concussion of the brain; it does not always result in death. My judgment is that this man had a concussion of the brain; I reached that conclusion because the man's eyes were dilated. And that is the only evidence I have that concussion of the brain was the cause of the man's death; death resulted from concussion. As to whether the only evidence or basis of my statement—for my conclusion that the man died—Mr. Ford died as a result of concussion of the brain is based on the fact that I found Mr. Ford's pupils dilated immediately after his death, I will state that his pupils were dilated right at once; they were dilated when I saw him; and that is the basis for my conclusion that the man died of concussion of the brain. I recognized Dr. Kopecky as an authority on heart disease."

This court would be unable to determine which of the two thoughts reflected by the evidence was correct, if in fact it were necessary to do so. It is our conclusion that the question of fact was raised by the evidence and that the jury was authorized, under the evidence, to find that death was caused by the blow on the head which was admittedly inflicted by the appellant.

In the case of Reeves v. State, 101 S. W. 2d 245, we find facts held to be insufficient to support a jury's verdict of guilt. On first consideration the case seems to be similar to the one now before us, but it is our conclusion that the distinguishment may be made positively. The deceased in that case was struck above the left ear with a knife, or sharp instrument, which inflicted a wound probably reaching to the skull. The doctor who treated him testified that he did not consider it serious at the time he was called to see him. He treated the wound for about five days, however, and to his great surprise, the party died. He was unable to tell what caused the death. The deceased had a finger that had become infected and there was quite a bit of speculation from the doctor on the possibility that the finger wound might have sloughed off and delivered pus to the blood, which caused a clot at some place. The most that can be said in that case is that there was no evidence at all that he died from that

wound. The nature of it would hardly create a suspicion that the wound caused the death. In the instant case the result of the blow on the head was immediate. From that lick he became unconscious. He lived only a few minutes, probably not more than five. He was a dying man from the time he was struck. We have no trouble in distinguishing the testimony which the state produced in the instant case from that in the Reeves case. We have found no other decision of this court which could in the least assist appellant to sustain his contention.

The remaining question then is whether or not the issue was affirmatively submitted to the jury in language that protected the rights of appellant on this the controverted issue. We fail to find any statement by any physician which positively says that the death was the result of heart trouble. As herein above recited, appellant's own evidence from a physician found it possible that death resulted from the blow charged in the indictment. Nevertheless, we will assume that all of the evidence raises the affirmative defense. All affirmative defenses should be submitted to the jury by an affirmative charge. Appellant complains that such was not done in the instant case. We quote paragraph 20 as follows: "If you believe, or have a reasonable doubt thereof, that the death of the said George Ford was not caused by being struck on the head with a bottle, but was caused by some other bodily ailment or disease, you will find the defendant not guilty."

There is more than one way of saying the same thing. Too frequently a charge on an affirmative defense is couched in language much more voluminous than the above quoted paragraph. We find no ground for any fear that the language is confusing or might be misunderstood. That contention is not made. It is argued that paragraph 20 is so inconspicuous that it was probably overlooked by the jury. This was a matter which able counsel could and probably did take care of in the argument of the case. The phrase "some other bodily ailment or disease" would certainly comprehend heart trouble or any other difficulty which he might have had, even the stomach trouble about which his wife gave evidence. We would not commend any additional language as probably adding clarity to the charge. It would be just as well if a part of it were eliminated, making it read as follows: "If you believe, or have a reasonable doubt thereof, that the death of said George Ford · * * * was caused by some other bodily ailment or disease, you will find the defendant not guilty." The fact that the additional clause was found in the sentence, "was not caused by being struck on the

head with a bottle," does not change the meaning. It is not confusing and certainly did not, in any way, lead the jury to overlook the charge. We think it sufficiently called the jury's attention to appellant's defense that Mr. Ford met his death because of a heart trouble.

Mr. Ford might have had heart trouble. If he did, it is possible that he died from a blow which would not otherwise have produced death. It is quite likely that the blow would, under such condition, have brought death more readily. The jury is not forced to the position in this case that he would not have died except for his heart trouble. Such is the position, if we understand it, of appellant. The facts were established sufficient for the jury that appellant struck the deceased on the head and that death followed as a result thereof. They cannot be forced to say that there were other contributing causes sufficiently potent to authorize an acquittal. It may be that Mr. Ford, with his physical ailments, would have died from shock and from a struggle, but such conclusion on the part of the jury would be based on speculation of the doctor-witnesses. The proof is that he died almost instantly following the blow and they had a right to conclude that it was a result of the blow, regardless of what the physical condition of the deceased might have been.

When the case was called for trial appellant presented a motion for change of venue. This was based on grounds the correctness of which this court cannot take judicial knowledge. We find no proof sustaining the allegations. The state contested this motion with affidavits of three citizens of the county. Upon this motion and contest we find no further action.

It is our view that the question of intent to kill was supported by circumstances which authorized the jury's finding. The court properly submitted that question to the jury and their finding thereon may not be disturbed by this court.

As the record is presented to us there is no reversible error and the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists with much earnestness that the facts are insufficient to show that deceased came to his death as a result

of a blow on the head with a beer bottle inflicted by the appellant.

There is no question but that appellant struck the deceased over the head with a beer bottle and that deceased died within a short time thereafter.

Dr. Fussell, a duly licensed physician, who arrived at the scene of the difficulty before the deceased died, testified that deceased came his death as a result of concussion of the brain and that he based such conclusion upon the fact that deceased's eyes were extremely dilated.

Dr. Wiedeman, who saw the deceased within twenty or thirty minutes after death and before the body had been moved, testified that "there was a mashed area over the left part of the skull, just in front and somewhat above the ear, which showed that what a doctor would say he was struck with some blunt object . . . ."

Upon the testimony stated, the jury was warranted in finding that the deceased died from concussion of the brain caused by the appellant striking him on the head with a beer bottle.

While it is true there was much testimony indicating that the death of deceased was occasioned by an impaired heart condition and was not a result of the blow to the head, we cannot say as a matter of law that the jury was bound thereby. It was the province of the jury to accept the testimony of the state's witnesses and to reject the testimony of the witnesses for appellant.

In addition to what we said in the original opinion, holding that the rule announced in the case of Reeves v. State, 131 Tex. Cr. R. 560, 101 S. W. 2d 245, was not here controlling, it is pointed out that the lack of proof upon which the reversal was ordered in the Reeves case—that is, that the physician there stated no facts upon which he expressed the opinion as to the cause of death—was, in the instant case, supplied. Here. Dr. Fussell stated the condition upon which he based his opinion— which was that of the dilated eyes. Whether that was sufficient, or not, was for the jury's determination.

We remain convinced that appellant's affirmative defenses— that is, a lack of intent to kill and that the deceased died from a heart ailment rather than from the blow to the head—were sufficiently submitted by the trial court in his charge.

Believing our original conclusion correct, the motion for rehearing is overruled.

Opinion approved by the court.