Sam **SELMAN,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07-81-0023-CR.

Court of Appeals of Texas, Amarillo.

May 11, 1984.

George L. Thompson, III, Thompson & Thomas, Lubbock, for appellant.

Jim Bob Darnell, Criminal Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

## ON REMAND

REYNOLDS, Chief Justice.

On original submission, we reversed the judgment decreeing appellant Sam Selman's conviction for voluntary manslaughter because the court's charge was fundamentally defective for authorizing his conviction on a theory not alleged in the indictment, but we declined to entertain appellant's challenge to the sufficiency of the evidence until the jury has had the opportunity to evaluate it under correct instructions. *Selman v. State*, 627 S.W.2d 543 (Tex.App.—Amarillo 1982, pet'n granted). Upon granting the State's petition for discretionary review, the Court of Criminal Appeals, concluding that we reached the right result in holding that the charge was fundamentally defective, affirmed that action; but the Court, declaring that our declination to review the sufficiency of the evidence was inappropriate, remanded the cause for our consideration of the sufficiency of the evidence. *Selman v. State*, 663 S.W.2d 838 (Tex.Cr.App.1984). Now, holding that the evidence is sufficient to sustain the conviction, we adhere to our previous judgment of reversal and remand.

The State alleged, and the jury found, after being advised of the restrictions which the law places upon them in condemning one on circumstantial evidence, that appellant did, with his hand and fist, strike and beat Jeral Ray Kirkland about his head and body, thereby causing Kirkland's death. Appellant challenges the sufficiency of the evidence to support a conviction for voluntary manslaughter on the rationale that since the evidence reveals four possible causes of Kirkland's death, every reasonable hypothesis except his guilt was not excluded.

This cause was tried, appealed and briefed before the determination on rehearing in *Hankins v. State*, 646 S.W.2d 191, 197 (Tex.Cr.App.1983), that a charge on circumstantial evidence is improper, and when the standard for review of the sufficiency of the evidence in circumstantial evidence cases was different from the standard employed for review in direct evidence cases. *See e.g., Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983). Subsequently, on rehearing in *Wilson*, it was decided that the standard for review in both circumstantial and direct evidence cases is, as announced in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wilson v. State, supra*, at 471. The standard, therefore, does not admit to a review of circumstantial evidence in the light of the presumption that the accused is innocent. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Cr.App.1984).

Yet, notwithstanding that we must look at all of the evidence in the light most favorable to the jury's guilty verdict, *id.*, it is said that if the circumstantial evidence supports a reasonable hypothesis other than the guilt of the accused, a finding of guilt is not a rational finding. *Wilson v. State, supra*, at 472. Thus, under appellant's challenge to the sufficiency of the evidence, we will review all of the evidence to determine if it supports a reasonable hypothesis other than appellant's guilt.

About 4:30 p.m. on 23 May 1979, appellant and Kirkland were seen in Kirkland's car with appellant driving toward Lubbock on the road from Shallowater. Approximately 45 minutes later, Kirkland was seen alone driving his car on the road toward his home in Shallowater.

At about 5 p.m. on that day, appellant hurriedly drove his pickup to the business of James L. Jensen in Lubbock, where Larry Allen Blackburn was present, to use the telephone, saying, "I have got myself into some real trouble now." Jensen observed that appellant had a blood smear on his face, blood on his hands, and a smear of blood on his shirt. When Jensen asked what happened, appellant explained that he had been out with Kirkland, had been in a fight with him, had hurt Kirkland "real bad," and according to Blackburn, "left him laying on the side of the road, more or less to die."

Appellant telephoned a friend, saying, so Jensen reported, that he had had a fight with Kirkland and that "I have really got myself into a mess this time." Next, appellant called a girl friend, telling her that he had had a fight with Kirkland, that he "had punched his lights out," and that he knew he "was in real trouble." He then telephoned two bail bond companies.

After the telephone calls, appellant repeated to Jensen and Blackburn that he had had a fight with Kirkland, had knocked him down, and had left him "in pretty bad shape." Asked by Jensen how serious it was appellant said, "I don't know. I thought I had killed him." He indicated he had given Kirkland mouth-to-mouth resuscitation and then left.

Following a conversation with Blackburn, the two men who had seen appellant and Kirkland together, and then Kirkland alone, on the Lubbock-Shallowater road, went to Kirkland's trailer home in Shallowater before 6 p.m. The second time they knocked, Kirkland came to the door clad in his shorts. He had a mark, like a cut or bruise, on his right forehead and on his left jaw. He seemed as if he had been drinking, he acted drunk, he slurred and mumbled his words, and he looked "pretty bad."

Kirkland's wife, Wanda, testified that when she arrived home about 7 p.m., he looked as if he had been in a fight. He was vomiting and off balance; however, she thought he had been drinking and would be all right. During the night, she heard Kirkland fall, apparently over a floor fan, and found him on the floor. When she saw blood on his pillow case, she thought he had sustained a cut to the back of his head when he fell; however, she decided she was mistaken when she did not see a cut. Neither the doctors who later saw Kirkland nor the mortician found any cut on the back of his head. A deputy sheriff, who had sold mobile homes, examined the trailer home and testified that if Kirkland had tripped over the fan, he would have hit the flimsy opposite wall.

The following day, May 24, when Mrs. Kirkland found Kirkland on the floor by the bed "out of his head," he was admitted to the hospital. When admitted, Kirkland was found to have fresh, i.e., two- or three-day old, bruises on his chest and a draining abrasion on the right side of his head with dried blood matted in his hair. Despite medical treatment, he died on 29 May 1979.

Kirkland's attending physician was Dr. Paul Meyer, who testified that Kirkland had a history of diabetes and high blood pressure, which subjected him to a more severe injury if struck than the average person would sustain. Based upon Kirkland's history, condition and symptoms signifying damage to the left side of the brain, he suspected trauma, i.e., a physical injury caused by outward force which could be caused by a blow, a fall, or a blow that caused a fall. Trauma can result in a bruise on the brain which will cause swelling, a distortion that increases pressure on the brain which can lead to a coma and death. Kirkland's symptoms were consistent with a contrecoup type of injury, an injury where the actual trauma is sustained on the opposite side of the brain from the bruised portion of the brain. From his physical examination and a cat scan film of Kirkland's skull, Dr. Meyer formed the opinion that Kirkland had a significant injury and profound damage to his brain which was contributed to, but not caused, by his diabetic acidotic condition.

The doctor gave four possible causes of Kirkland's death: 1) he was struck in the jaw and fell, causing leakage of blood into

the brain; 2) his fall at home, rather than the blow to the jaw and resulting fall, caused the injury; 3) a cerebral vascular accident; and 4) a combination of the three. However, with the advantage of the autopsy report, Dr. Meyer testified that the most likely cause of death was external trauma to the head leading to injury to the brain, which was complicated by high blood pressure and diabetes. The location of the hematoma, Dr. Meyer further stated, made a hypertensive spontaneous hemorrhage unlikely.

The autopsy report was made by Dr. Jose A. Diaz-Esquivel, who performed an autopsy upon Kirkland's body, disinterred a month after his death. He found hematomas, *i.e.*, swellings containing blood, on the left side of the face, in the right temporal area, right forehead and side, and in multiple areas of the trunk where contusions were present. Contusions and hematomas are the type of bruises that, in his words, "you would see in a fight." Inside the brain, the doctor found a marked amount of swelling, and hemorrhages in the area of the mid-brain which, to him, was the cause of death, secondary to "the trauma inflicted on the right side of the head." He specifically said that the injury which caused Kirkland's death was a contrecoup injury.

The doctor was of the opinion that the cause of contusions found around Kirkland's body, positioned as they were, was a fight. He further opined that Kirkland was hit on the left side of the face and fell on something with two convexities or lumps causing a contrecoup injury in the brain and a hemorrhage on the left side, which eventually caused his death. He also gave his opinion that Kirkland's injury could not be produced by a normal or stumbling fall onto a smooth surface such as a wall.

The evidence is insufficient, appellant argues, because the record indicates more than one possible cause of Kirkland's death and, therefore, the evidence does not exclude every reasonable hypothesis except his guilt, particularly under the instructive

holding of *Smith v. State*, 147 Tex.Cr.R. 342, 180 S.W.2d 622 (1944). We are not in accord. In *Smith*, the court, after stating that the corpus delicti, or body of the crime, must be shown by proof that an identified person died by some criminal act and not by natural causes or by accident, held that the State failed to establish the corpus delicti by the evidence that the decomposed body of the deceased was found some four weeks after the defendant had hit her "pretty hard," but left her alive. *Id.* at 625–26. In short, the State failed to prove that she died from the defendant's blow. But that is not the status of the evidence adduced in this cause.

Here, Dr. Meyer did give four possible causes of Kirkland's death; yet, under the evidence, appellant's act was the only reasonable cause of the death, the other causes being eliminated as reasonable causes. One of the other causes, Kirkland's fall at home, was negated as the reasonable cause of death by the evidential circumstances of the fall and Kirkland's trauma, culminating in Dr. Diaz-Esquivel's opinion that Kirkland's injury could not be produced by such a fall. Another, the cerebral vascular accident, was characterized by Dr. Meyer as being unlikely, *i.e.*, unreasonable. The other, a combination of the first three possible causes, was discounted as the reasonable cause by the elimination of all causes except appellant's act.

Appellant's act, moreover, was further evidenced to be the reasonable cause of Kirkland's death. The medical testimony regarding injuries sustained by Kirkland and which caused his death is consistent only with appellant's reported fight with Kirkland in which appellant knocked Kirkland down, "punched his lights out," hurt him "real bad," and left him "in pretty bad shape ... laying on the side of the road, more or less to die," thinking "I had killed him." Although appellant actually left Kirkland alive, his act was credited by the medical testimony as at least contributing to Kirkland's death and, thereby, he would be responsible even though there were other concurring causes. *Jones v. State*, 582

S.W.2d 129, 134 (Tex.Cr.App.1979); *Gonzales v. State*, 505 S.W.2d 819, 820 (Tex.Cr. App.1974). Under all of the evidence, then, the jury was entitled to conclude there was no reasonable hypothesis other than appellant's guilt.

Parenthetically, we note that in citing *Smith v. State, supra*, in support of his contention that the evidence is insufficient to establish the corpus delicti, appellant says, "This case must also be read to speak to intention to injure or kill another person and that here such conduct alone did not evidence intent to kill." If by that otherwise undeveloped statement appellant implies the evidence also is insufficient to support a finding of his intent to kill, we must disagree. The comments of appellant quoted in the preceding paragraph justified the jury's finding of an intent to kill regardless of Kirkland's physical condition, *Aguillar v. State*, 153 Tex.Cr.R. 509, 221 S.W.2d 242, 245 (1949), especially since the comments showed his disregard for human life. *Phillips v. State*, 152 Tex.Cr.R. 612, 216 S.W.2d 213, 214 (1948).

We conclude, therefore, that any rational trier of fact, particularly when advised of the legal restrictions on condemning one on circumstantial evidence, could have found from this evidence the essential elements of the crime beyond a reasonable doubt. Appellant's insufficient evidence ground of error is overruled.

Accordingly, we adhere to our previous judgment by which we reversed the trial court's judgment of conviction and remanded the cause.