

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| JUAN ANTONIO GONZALEZ, | § | No. 08-14-00293-CR |
|  | § |  |
| Appellant, | | Appeal from |
|  | § |  |
| v. | | 346th District Court |
|  | § |  |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
|  | § |  |
| Appellee. | | (TC # 20120D05048) |
|  | § |  |

## DISSENTING OPINION

I, respectfully, dissent. I would hold Appellant's murder conviction is legally insufficient, however, I do find the evidence supports a conviction for manslaughter. Accordingly, I would reform the judgment to reflect a manslaughter conviction and order the trial court to conduct a new punishment hearing.

First, the majority acknowledges the nature of Molina's injury in and of itself does not demonstrate intent. The fact that Molina fell to the ground does not demonstrate the *mens rea* for intentionally or knowingly causing a death. Further, Molina's fatal head injury was caused by a fall upon a sidewalk that was "irregular, having bumps, cracks" and a part which "jutted up like a teepee." Moreover, while the record reflects that Appellant and his friend, Medrano, at a friend's

house, in a bedroom or living room, would practice a move involving taking a person down by grabbing their legs, two or three times a week. The State failed to present any evidence that either Appellant, Medrano or anyone else was injured or that they contemplated such a "move" was an act clearly dangerous to human life. In fact, their repeated practices proved the opposite, that particular "move" did not cause injury let alone a fatal head injury. But for the jutted concrete teepee that Molina's head made contact with, he may not have suffered the injury that caused his death. Medrano and Appellant's repeated practices of the "move" upon each other with no injury shows Appellant did not intend to cause serious bodily injury, because he was unaware that it could cause serious bodily injury. Arguably, the "move" alone is not fatal, only in conjunction with an uneven concrete jutted surface. In my view, the "move" joined with an uneven, dangerous surface created an unacceptable risk. This conscious risk creation is manslaughter. *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App. 1975).

The majority also points to Appellant's flight as indicia of his guilt. While there is no question Appellant fled, his flight does not prove he is guilty of murder as opposed to manslaughter or criminally negligent homicide. It allows an inference of guilt for to support a finding of any of those three alternatives, murder, manslaughter or negligent homicide.

Last, the majority relies on Appellant's striking Molina while on the ground and leaving Molina injured without rendering assistance to shore up the sufficiency of the murder conviction. The majority cites to *Phillips* for the proposition leaving a victim helpless supports intentionally and knowingly committing murder. In *Phillips*, the facts are brief:

> The record reflects that on the night of September 23, 1947, S. T. Sanders, Hubert Phillips, and the deceased, Leroy Farrabee, were together and had been drinking beer and whiskey. Late that night they purchased some more beer and drove out several miles East of Wichita Falls. After they had driven several miles they stopped, drank some more beer, and while thus entaged, [sic] appellant and

2

the deceased became involved in a difficulty, which resulted in Farrabee being knocked to the ground. Sanders and Phillips then returned to Wichita Falls leaving the deceased lying helpless and unconscious or semi-conscious on the side of the highway. The next morning the lifeless body of Leroy Farrabee was discovered in the barrow ditch.

*Phillips* v. State, 216 S.W.2d 213, 214 (Tex.Crim.App. 1948).

Turning to the case at hand, Appellant's encounter with Molina occurred late September, in the afternoon, between 5 and 6, in a residential area. While the road can be heavily trafficked, it was not on this day. Based on the record, the passing motorists that witnessed the incident and stopped were Mario Ramos; Laura Mena; and Erin Lile. Another witness that passed away prior to trial was a woman siting on the porch of an adjacent house who Molina told "call the cops, call the police." Other witnesses include Lile's daughter that was in the car with her and a male neighbor who were never called to testify.

Ramos testifies that other cars had pulled over as Appellant and his friends walk away and he calls 911. Once Ramos gets out of his car, there were several individuals standing around. Mena stops and gets out of her car, as the teenagers walk off and as they are about two houses away, she asks them to return. Mena immediately calls 911 as she observes Molina on the sidewalk. Mena also informs 911 that Molina has a gun. Lile also stops and gets out from her car with her daughter to call 911, but orders the girl back to the car when she sees Molina's gun tucked into his pants as he lies on the ground. Lile tells the person (Mena) on the phone with 911 to let them know that the victim, Molina, has a gun. As Lile stands next to Molina he repeatedly attempted to get up and she told him not to move.

*Phillips* and this case are readily distinguishable. In *Phillips*, three individuals are drinking late at night in a rural area, engage in a fist-a-cuffs in which the victim is left on the side of the road to be discovered in the morning. Here, in the late afternoon, on a well-travelled road in a

residential area, in plain view of neighbors and drivers along the road, Appellant and Molina come to blows. A woman on the porch of a nearby house is instructed to call the police, two of the witnesses actually call 911, all the while Molina is attempting to get up with a gun tucked into the back of his pants. The question is not whether any one of these witnesses could render assistance, but rather was the victim left in a precarious medical state and in a place that was not easily discoverable. The answer is no and *Phillips* does not apply.

Ramos sees one punch, Appellant and Molina fall together, then Appellant gets up, all within ten seconds. Mena relates she see the three teenagers and Molina appear as if they are engaged in a confrontation, then after her u-turn, she sees the teenagers walking away with Molina on the ground. According to Lile, while driving, she observed in her rearview mirror, Appellant run into Molina causing him to fall. Under direct examination, Lile testifies she also sees Appellant on top of Molina "pummeling" him. However, during cross-examination, she testifies to one punch, the fall and after she makes a u-turn, observes Appellant get up and walk away. Medrano, Appellant's friend, testifies as soon as Molina falls, Appellant gets on top of him and punches him twice. According to Ramos, the time between the fall and Appellant and his friends walking away was ten seconds. Medrano relates that Appellant is on top of Molina no more than two to three seconds, just enough time to throw 2 quick punches. The Appellant testified he punched Molina twice and then knocked him down, in self-defense after Molina had hit him. Appellant fell on top of Molina, feeling Molina trying to kick, Appellant punched him two times more and then got up. Medrano and Appellant corroborate each other as to the number of times Molina is punched after his fall, twice. Lile testifies to punches by Appellant while Molina is on the ground, but she does not specify the number. This record offers little support that upon Molina's fall he was instantly unconscious and helpless. Lile's testimony is that when she arrived upon the scene after the

4

teenagers had left, Molina was moving and turning, in an effort to get up, to such a degree that she was able to observe the gun tucked in his back. In fact, she was so alarmed by the presence of the gun, she ordered her daughter away.

Appellant's subsequent actions do not rise to the level that the *mens rea* of intentionally and knowingly murder can be inferred on this record. Further, Appellant's pulling Molina's legs out from under him does not constitute an act clearly dangerous to human life or support an inference that Appellant acted with a conscious desire to create a substantial risk of death by causing serious bodily injury.

April 10, 2019

YVONNE T. RODRIGUEZ, Justice